UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SHAWN GREEN,

    Petitioner,

  V.

DONALD SELSKY,[1]

    Respondent.

**REPORT AND RECOMMENDATION**

01-CV-1761

---

### I. INTRODUCTION

Petitioner, Shawn Green, acting *pro se*, commenced this action seeking habeas corpus relief under 28 U.S.C. § 2254. Petitioner is presently an inmate at the Great Meadow Correctional Facility. In 1999, he was penalized after a prison disciplinary hearing while incarcerated at the Upstate Correctional Facility. Petitioner contends that the disciplinary penalties were imposed in violation of his constitutional rights and should be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is

---

[1] Donald Selsky is the named respondent in this action. However, the correct respondent in a habeas corpus petition is the superintendent of the facility where the petitioner is being held. 28 U.S.C. § 2243. Given that Petitioner is presently incarcerated in the Great Meadow Correctional Facility, the correct Respondent is George Duncan, the Superintendent of the Great Meadow Correctional Facility. Id. In light of Petitioner's *pro se* status, the fact that this will not prejudice Respondent, and in the interests of court efficiency, this Court will deem the petition amended to change the name of Respondent to George Duncan.
  The Clerk of the Court is directed to terminate Donald Selsky as Respondent, add George Duncan, Superintendent of the Great Meadow Correctional Facility, as the new Respondent, and revise the caption of this case accordingly.

presently before this Court for a report and recommendation. (Docket No. 16).

## II. BACKGROUND

**A.   Facts**

The following factual summary is derived from the prison records attached to Respondent's Answer[2]. On November 19, 1999, Petitioner was in his cell's "recreation pen[3]" after the pen was supposed to be closed. (T. at 7-8). Sergeant Salls ("Salls") ordered Petitioner to enter his cell and lock the pen door. (Id.). Petitioner allegedly refused to comply and then locked himself in the recreation pen. (Id.). According to the misbehavior report, two other prison officials ordered Petitioner to come out of his recreation pen, yet he refused. (Id.). Prison officials then forcibly subdued Petitioner and returned him to his cell. (Id. at 8).

On November 20, 1999, Petitioner was served with an inmate misbehavior report. (Id. at 2). Petitioner was charged with failure to respond to a direct order and conduct that disturbs the order of the facility. (Id.).

A Tier III[4] prison disciplinary hearing commenced on December 1, 1999. (Id. at 1).

---

[2] For purposes of clarification, the hearing transcript can be found at Exhibit C as part of the Respondent's Answer in the state court records in this proceeding. References proceeded by "T" are to the transcript pages of Petitioner's disciplinary hearing held on December 1, 1999.

[3] A "recreation pen" is a room connected to, but behind, the cell.

[4] Inmates in New York correctional facilities are subject to three levels of disciplinary hearings for violating prison rules, pursuant to regulations codified in the Official Compilation of Codes, Rules, and Regulations of the State of New York. See N.Y. Comp Codes R. & Regs. tit. 7, §§ 270.2, 270.3. Tier I hearings address the least serious offenses, which can be punished by loss of privileges such as recreation and commissary purchases. See id. at § 252.5. Tier II hearings address more serious infractions, for which inmates are subject to up to 30 days of confinement in a Special Housing Unit (SHU). See id. at § 253.7. The most serious violations are the subject of Tier III hearings and may result in SHU confinement for the remainder of the inmate's prison time, as well as forfeiture of "good time" credits. See

M. Patnode ("Patnode" or "hearing officer") was designated as the hearing officer. (Id.). Petitioner pled not guilty to the charges in the inmate misbehavior report, asserting that he was never given a direct order to leave the recreation pen. (Id. at 8, 15-16). Petitioner was given the opportunity to call witnesses to testify on his behalf, but chose not to do so. (Id. at 7).

At the end of the hearing, the hearing officer found Petitioner guilty of all charges, citing the misbehavior report, Petitioner's testimony, and a videotape of the incident as the evidence he relied upon for his disposition. (Id. at 24). Petitioner was given the penalty of eight months confinement to the SHU, with loss of telephone, packages, and commissary, and three months recommended loss of good time. (Id.). After administrative appeal, Petitioner's penalty was affirmed.[5] It is not clear from the record whether the recommended loss of good time credits was ever adopted.

**B.    State Appellate Proceedings**

Petitioner, acting *pro se*, commenced an Article 78 proceeding in the Supreme Court of the State of New York, Franklin County, seeking to reverse and expunge the disciplinary determination. The Court found that the Article 78 petition raised evidentiary issues with respect to the disciplinary hearing, requiring the Court to transfer it to the Appellate Division, Third Department for determination. See Green v. Selsky, 726 N.Y.S.2d 170 (3d Dep't

---

id. at § 254.7; McEachin v. McGuinnis, 357 F.3d 197, 199 n. 1 (2d Cir. 2004).

[5] See "Exhibit E" attached to Respondent's Answer in the state court Article 78 proceeding.

3

2001)[6].

In a decision issued on June 7, 2001, the Appellate Division confirmed the disciplinary determination and denied the petition. Id. at 171. The Appellate Division found that there was more than substantial evidence to support the determination of guilt. Id. The Appellate Division also found that Petitioner's allegations of Hearing Officer bias were "without merit." Id. Petitioner's motion for leave to appeal to the Court of Appeals was later denied.[7]

**C.   Federal Habeas Corpus Proceedings**

Petitioner commenced this action on November 19, 2001, by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Thereafter, the Respondent filed submissions outlining his position. (Docket No. 6 & 7).

### III. DISCUSSION

**A.   Federal Habeas Corpus Standard**

To obtain a federal writ of habeas corpus, a state prisoner must show that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254. Habeas corpus is appropriate only for challenges to the "fact or duration" of confinement. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Peralta v. Vasquez, 467 F.3d 98, 102 (2d Cir. 2006); see also, Jenkins v. Haubert, 179 F.3d 19, 22 (2d Cir. 1999)(discussing habeas

---

[6]In Respondent's brief, he cites to Green v. Selsky, *269 A.D. 2d 653* (3d Dep't 2001). See (Docket No. 7, p.3)(emphasis added). However, that Appellate Division decision is on an entirely different matter brought by Petitioner. The relevant Appellate Division citation can be found above.

[7] The record is not clear as to the date of the Court of Appeals denial, however, Petitioner does not dispute that his motion was denied. Therefore, this Court will accept Respondent's representation that Petitioner's appeal was denied.

4

relief for prisoners under Preiser.).

The Fourteenth Amendment's Due Process Clause protections apply to determinations affecting duration of confinement because an inmate's liberty interest is at risk. Wolff v. McDonnell, 418 U.S. 539 (1974).[8] A disciplinary conviction that results in the loss of good-time credits is equivalent to a loss of a "shortened prison sentence." Wolff, 418 U.S. at 556-57. Therefore, habeas corpus is the appropriate vehicle through which to challenge a disciplinary proceeding that results in the loss of good time credits. See Preiser, 411 U.S. at 500 (holding that § 2254 is the "sole remedy for a prisoner's challenge to revocation of good-time credits").

**C.   Petitioner's Claims**

Petitioner asserts three claims in support of his petition: (1) that the hearing officer was biased, (2) that the regulations Petitioner was charged with violating were vague, and (3) that the misbehavior report charged Petitioner with creating a disturbance, when the appropriate violation charged should have been an inmate movement violation. Petitioner does not specifically challenge his sentence.

In the interest of judicial economy, this Court will construe the instant Petition as asserting that Petitioner's Fourteenth Amendment right to Due Process was violated by the prison disciplinary proceeding and that the recommended loss of good time credits implicates his liberty interest. However, for the reasons stated below, this Court finds that Petitioner was not deprived of due process and his Petition should therefore be DISMISSED.

---

[8] However, these protections do not apply to mere changes in the conditions of confinement. Id. at 557.

**Due Process Protections**

The due process protections afforded a prison inmate do not equate to "the full panoply of rights" due to a defendant in a criminal prosecution. Wolff, 418 U.S. at 556. For example, the Second Circuit Court of Appeals has noted that, "there is no right to counsel or to confrontation at prison disciplinary hearings." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004). When prisoners are disciplined as the result of a disciplinary hearing determination, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including: (1) at least 24-hour advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence in defense, when consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action. Wolff, 418 U.S. at 559, see also, Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999); Sira, 380 F.3d at 68.

The Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by "some evidence." Superintendent v. Hill, 472 U.S. 445, 455 (1985). The Second Circuit has noted that this standard is extremely tolerant and is satisfied if "there is any evidence in the record that supports" the disciplinary ruling. Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir.2000), see also, Sira, 380 F.3d at 69. However, the "some evidence" standard requires some "reliable evidence." Id.

In the present case, there is no dispute that Petitioner was served with a copy of the misbehavior report on November 20, 1999, (T. at 2), which was well in excess of the 24-hour minimum period required by Wolff. Wolff, 418 U.S. at 564.

Petitioner claims that he was denied his right to an impartial hearing officer. (Docket No. 1). Petitioner's argument is that during the hearing, while viewing a videotape of the incident, hearing officer Patnode allegedly confirmed for Petitioner that he was not given a direct order. Petitioner claims that Patnode was biased against him because even though he allegedly confirmed that no direct order was given, Patnode still found him guilty of refusing to follow a direct order. See (Docket No. 1).

It is well established that an inmate facing a disciplinary hearing is entitled to a fair and impartial hearing officer. 7 NYCRR 253.1, 254.1 (guaranteeing right to impartial hearing officer); see McCann v. Coughlin, 698 F.2d 112, 122 (2d Cir.1983) (members of prison disciplinary Adjustment Committee must be fair and impartial); Powell v. Ward, 542 F.2d 101, 102-03 (2d Cir.1976) (recognizing due process requirement of impartial hearing officer). The Second Circuit has suggested that a hearing officer is biased when they were a witness to or investigated an incident that is the subject of a disciplinary proceeding. Powell, 487 F.Supp. at 931; see also, Bolden v. Alston, 810 F.2d 353, 358 (2d Cir. 1987); 7 NYCRR 254.1.

Petitioner does not allege that Patnode was a witness to the incident in question or that he was otherwise involved in the investigation of the incident. Moreover, there is no allegation of personal *animus* or other factors indicative of bias. Instead, Petitioner claims that (1) Patnode confirmed that no direct order was given and (2) therefore, Patnode's contrary determination must have been based upon bias.

A review of the hearing transcript does not support Petitioner's allegations. See (T at 11). The following is the exchange that Petitioner relies upon, which took place during the hearing while the parties were viewing the videotape of the incident:

7

> Green: Is it possible that this time has stayed for for (inaudible) on the tape? Um, sergeant didn't give no direct order.
>
> Patnode: I didn't hear the ser, the sergeant say. I heard the sergeant say they're refusing to come in [from the rec pen area]. But I didn't hear him say anything else besides that. I see the inmate up in the upper right corner of the display out in the rec pen area. Again it's hard to distinguish who the inmate is. You hear inmate conversing with what appears to be staff on how he'd like to move somewhere. It appears to be inmate Green's voice get fed up at times.

Id.

Petitioner construed this exchange as Patnode confirming that no direct order was given. However, Patnode simply said was that he could not hear what Sergeant Salls was saying to Petitioner at that point in the tape. In fact, Patnode made other references to the fact that the tape was difficult to hear clearly at times. See (T at 9 & 11). Patnode's comments do not suggest that no order was given, but rather that such order is simply not audible due to the sound quality of the tape.

Moreover, even assuming that Patnode did confirm that no direct order was audible on the tape, there was more than sufficient evidence supporting his decision. See Friedl, 210 F.3d at 85, see also, Sira, 380 F.3d at 69. Included in the evidence presented was the misbehavior report written by Sergeant Salls describing the incident and referencing the fact that a direct order was given, Petitioner's own testimony, and a video tape of the whole incident showing Petitioner refusing to come out of his recreation pen into his cell.

Additionally, the surrounding facts and circumstances strongly suggest that a direct order for Petitioner to come out of his recreation pen was given. Otherwise, there would be no explanation for the videotape depicting various officers coming to Petitioner's cell to request that he come out of the recreation pen and for the ultimate force that was used to extract Petitioner from his recreation pen. (T at 11-14).

It should also be noted that the hearing officer accommodated all of Petitioner's requests for various information, much of which was not necessarily relevant to the proceeding. In fact, Hearing Officer Patnode offered to adjourn the hearing at least four times for Petitioner to obtain information and did take three adjournments to address Petitioner's various requests. See (T at 5, 6, 15, 21, 22, & 24).

Petitioner does not dispute that he was informed of his right to call witnesses but decided he would call none. (T at 7). Additionally, Hearing Officer Patnode explained the evidence that he relied upon and set forth the reasons for his disciplinary action. Id. at 24. Patnode also put his disposition into writing.

Petitioner's second and third claims in his Petition for habeas relief invoke Department of Corrections Services ("DOCS") regulations. Petitioner claims that the DOCS regulations are vague and that he should have been charged with a different violation. However, "[f]ederal constitutional standards rather than state statutes define the requirements of procedural due process." Russsell v. Selsky, 35 F.3d 55, 60 (2d Cir. 1994) (citing Robison v. Via, 821 F.2d 913, 923 (2d Cir.1987); see also, (Cleveland Board of Education v. Loudermill, 470 U.S. 532, 540-41(1985)). Petitioner has failed to show that the DOCS regulations at issue are unconstitutionally vague and/or that there was any constitutional error in the charging decision made by the prison officials.

9

Accordingly, this Court finds that a review of the prison record in this case shows that Petitioner received all the process that was due him and that there was reliable evidence against him to support the hearing officer's determination. As such, even assuming arguendo that Petitioner's liberty interest was implicated by the recommended loss of "good time" credits, Petitioner has failed to establish that the deprivation of his liberty was in violation of his federal constitutional rights.

Accordingly, the Petition for habeas corpus relief should be DENIED.

## IV. CONCLUSION

Based on the foregoing, it is recommended that the Petition be DISMISSED. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, it is recommended that a certificate of appealability not issue. 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED:   January 31 , 2007
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

11

SO ORDERED.

January 31, 2007

_____
Victor E. Bianchini
United States Magistrate Judge